## KIMBALL *v.* JACKMAN.

The plaintiff pledged to A a colt as security for a debt due A from him. A, with the plaintiff's assent, made a conditional sale of the colt to B, the colt to remain A's property until B should pay the balance of the price. B sold the colt to C, without the knowledge of the plaintiff or A, and C sold him to the defendant, who also sold him and received his pay therefor before the bringing of this suit ;

*Held,* that as the sale to B was conditional, no title could vest in any subsequent purchaser until the full price due from B was paid ; that A in making the sale acted only as the plaintiff's agent or assignee, and his contract would enure to the plaintiff's benefit ; and that the plaintiff, after due demand, could maintain an action of assumpsit against the defendant to recover the balance due from B upon the sale.

ASSUMPSIT, by James H. Kimball against Joseph M. Jackman, for $13, money had and received, and interest thereon. Writ dated September 9, 1859. Plea, the general issue.

On the trial, it appeared that in the summer of 1853, the plaintiff, being indebted to one John H. French, placed in his hands, as security for his indebtedness to him, a young colt. While the colt was in French's possession, as security, the plaintiff had some conversation with Samuel C. Young, who understood how French held the colt, about purchasing it and paying the price to French, but they did not trade. Subsequently, in the fall of 1853, French, with the assent and authority of the plaintiff, and in his presence, sold the colt to Young for $25, the colt to remain French's until the $25 was paid in full. Young paid French $12 toward its price, and then

sold it to one Tewksbury, who sold it to the defendant. As soon as French learned that the defendant had purchased the colt, he notified him that the colt belonged to himself, and that he should take measures to recover it, unless the plaintiff paid him his indebtedness. French applied the $12, paid him by Young, toward satisfaction of the plaintiff's indebtedness to him. French left this part of the country in the fall of 1854, and before doing so left his account against Young with an attorney for collection, making a memorandum underneath the same, on his ledger, that he sold this colt to Young in the fall of 1853, the same to remain his until paid for. In September, 1857, the plaintiff discharged his indebtedness to French, to secure which the colt had originally been placed in French's hands.

In the summer of 1859, the defendant sold the colt to one Smith, for $125, and soon thereafter the plaintiff demanded of him the sum of $13, and interest, being the balance of the price for which French sold the colt to Young, which Young did not pay, and the defendant declining to pay, this suit was brought to recover it.

The court being of opinion that upon this evidence the plaintiff could not maintain his action, directed a verdict for the defendant, and the plaintiff excepted.

*A. P. Carpenter*, for the plaintiff.

*H. Hibbard*, and *Lang*, for the defendant.

NESMITH, J.   The facts in this case show that the plaintiff, in 1853, was indebted to John H. French, and to secure him, put into his possession, as a pledge, a young colt.   Afterward one Young proposed to purchase the colt, and at a subsequent time, in the fall of the same year, the plaintiff and French sold the colt to Young for the price of $25, Young advancing $12 of the sum — the colt to remain French's until the price was paid in full.

The sum of $12 was duly credited to the plaintiff by French, leaving $13 the balance then due on the colt.

By the action of the parties interested here, there seems to have been first created a legal pledge as a security to French, by the delivery of the colt in question, the special property in the animal to vest in French until his debt was paid, and the general property to remain in the plaintiff, the pledgor. Next a conditional sale was effected to Young, the parties conveying a qualified title to him, and French, by virtue of the new contract, becoming the owner until the price was paid in full.

The case does not show that any actual change of interest then occurred, as between the plaintiff and French. No new consideration passed between them, nor did French give up his claim against him. The relation of debtor and creditor or pledgor and pledgee had not actually changed; but French was to be called the general owner until Young paid the balance due on the colt, which was then $13, and the plaintiff would of course realize the benefit of the payment from Young to French of the balance, which would discharge so much of French's claim against him.

Young next undertook to sell the colt as his own property, and to pass full title to Tewksbury, and in the same manner Tewksbury to the defendant. What title could Young pass? Evidently no greater title than he himself had.

It is a familiar elementary principle of the law that mere possession of personal chattels, without some other evidence of property, or of authority from the owner to sell, will not enable the possessor to transfer a better title than he has himself. *Coville* v. *Hill*, 4 Den. 323. The owner of property is not bound by a sale, made in a mode different from that which he has authorized, and not for his benefit, even though the property has been resold by the vendee. Hill. on Sales 32. *Parsons* v. *Webb*,

8 Greenl. 38. The law protects the seller, claiming to enforce the condition, under a variety of circumstances. A purchased a mare of B, and it was agreed in the note, which A gave for the purchase money, that B should keep possession of the mare until the note was paid. A sold the mare before the note was paid ;—held, that no title passed to the vendee, as none had vested in A, and the vendee was liable, after demand, in trover to B. *Buckmaster* v. *Smith*, 22 Vt. 203 ; *West* v. *Bottom*, 4 Vt. 203 ; *Porter* v. *Pettengill*, 12 N. H. 298 ; *Marston* v. *Baldwin*, 17 Mass. 606 ; *Haven* v. *Emery*, 33 N. H. 66. If a person undertake to pledge the property pawned, for a debt beyond his own, or to make a transfer thereof to his own creditor, as if he were the absolute owner, it is clear, in such a case, that he would be guilty of a breach of trust, and the purchaser would acquire no title beyond that held by the pawnee. Story's Bail., sec. 324.

Under his agreement with the plaintiff and French, Young had no title in the colt to transfer to another, until he first paid $13, for which it stood pledged ; nor could a purchaser under Young derive or make a better title than Young had in himself. The case finds that the defendant has converted the colt into money, and that a demand was made upon him before this action was brought, and that French has been fully indemnified by the plaintiff, to the extent of his claim upon the horse. There is then both the equitable and legal claim to the $13 united in the plaintiff, which he has a right to recover of the defendant, with interest thereon since the time of the conditional sale to Young. The form of the action is favorable to the defendant, and he can not well complain of the amount required of him to pay. He has converted the property into money, a portion of which rightfully belongs to the plaintiff.

The verdict must be set aside, and a

*New trial granted.*